12/10/2008  10:40   302-282-1892          CHASE USA NA FINANCE                PAGE  05/30

IN THE CIRCUIT COURT OF WASHINGTON COUNTY, ARKANSAS

DERRICK DAVIDSON                                                                     PLAINTIFF

vs.                             Case No. CV2008- 4518-4

CHASE BANK USA, NATIONAL ASSOCIATION
d/b/a COUNTRYWIDE VISA d/b/a FIRST USA BANK
and d/b/a BANK ONE TRUST COMPANY, N.A.                                               DEFENDANT

## COMPLAINT

For his Complaint ("Complaint") against the Defendants Chase Bank USA, National Association d/b/a Countrywide® Visa® d/b/a First USA Bank and d/b/a Bank One Trust Company, N.A., Plaintiff Derrick Davidson ("Davidson") alleges and states:

### IDENTITY OF THE PARTIES, JURISDICTION and VENUE

1. Davidson is an individual resident of Washington County, Arkansas whose address is 3236 E. Charing Cross, Fayetteville, Arkansas 72703.

2. Chase Bank USA, National Association is a national banking association organized under the laws of the State of Delaware with its principal place of business located at 200 White Clay Center Drive, Newark, Delaware 19711. Mr. Keith W. Schuck, Mr. Raymond L Fischer, and Mr. Christopher Marini are each officers of Chase Bank USA, National Association. Chase Bank USA, National Association does business as or through the following entities: Countrywide® Visa®, First USA Bank, and Bank One Trust Company, N.A.

3. The Defendant conducts business in the State of Arkansas and specifically with regard to the transaction that is the subject matter of this Complaint. Defendant, therefore, is subject to the personal jurisdiction of this Court.

1

4. This Court has jurisdiction over the subject matter of this lawsuit pursuant to Amendment 80, §6 of the Constitution of the State of Arkansas and Ark. Code Ann. § 16-13-201.

5. This Court is the proper venue for this case pursuant to Ark. Code Ann. § 16-60-109

## FACTUAL BACKGROUND

6. Approximately 1 1/2 years ago Davidson was issued a credit card by a company identified as Countrywide® Visa®. Davidson applied for and was issued the Countrywide® Visa® credit card when he was offered a promotion that allowed him to draw $10,000.00 advance with no interest for one year ("First Offer"). During that year, the credit line on that card was increased to $12,500.00. The United States Office of the Comptroller of Currency identifies Chase Bank USA, National Association as the issuer of the subject Countrywide® Visa®.

7. On or about September 2008, the anniversary date of First Offer, Davidson paid the entire balance due on the Countrywide® Visa®, leaving a zero balance.

8. On November 6, 2008, Davidson received another promotion from Countrywide® Visa® "because of the good credit on [his] Countrywide® Visa® account" specifically offering to advance Davidson funds up to his credit line of $12,500.00 at 0% for one year ("November 6 Offer"). A copy of the November 6 Offer to Davidson is attached hereto as Exhibit A. At the time of Davidson's receipt of the November 6 Offer, Davidson's balance on his Countrywide® Visa® credit card account was zero, and, therefore, Davidson was eligible to draw his entire $12,500.00 line of credit based on the November 6 Offer. A copy of Davidson's

2

October 2008 Countrywide® Visa® credit card statement showing his zero balance is attached hereto as Exhibit B.

9.  The November 6 Offer specifically explained, "It's like giving yourself a fixed-rate loan with no application and no waiting around for approvals."

10.  As specifically instructed by the November 6 Offer, Davidson timely accepted Countrywide® Visa®'s November 6 Offer by writing himself a $12,300.00 promotional check provided along with the November 6 Offer, and, again, as specifically instructed by the November 6 Offer, Davidson deposited that promotional check into his personal checking account. A copy of Davidson's November 7, 2008 check accepting the November 6 Offer is attached hereto as Exhibit C. The paying bank on the promotional check was identified as First USA, which is another entity through which Defendant did business to facilitate the November 6 Offer.

11.  After depositing the Countrywide® Visa® promotional check into his personal checking account on November 7, 2008, and, again, as contemplated by the November 6 Offer, Davidson issued checks from his personal checking account to pay creditors, including one check to the United States Treasury in the amount of $3,795.47.

12.  On November 13, 2007, Davidson was telephoned by his bank and notified that the promotional check deposited pursuant to the November 6 Offer had been refused and returned to Defendant. The reason given for the refusal and return was: "Refer to Maker." A copy of the written notice Davidson subsequently received from his bank is attached hereto as Exhibit D. The paying bank for the subject check identified on the Notice from Davidson's bank was identified as Bank One Trust Company, NA, another entity through which Defendant did business to facilitate the November 6 Offer.

3

13. Upon dishonor of the promotional check by Defendant, Davidson's bank refused to pay checks he had written to his creditors using the funds he received from the November 6 Offer, including the $3795.47 check to the United States Treasury. A copy of the Insufficient Funds Notice received from his bank for dishonor of Davidson's $3,795.47 check to the United States Treasury is attached hereto as Exhibit E.

14. Immediately after being contacted by his bank about the refusal and return of Countrywide® Visa® promotional check, Davidson telephoned Countrywide® Visa® at its customer representative service center to attempt to resolve Defendant's dishonor of that check.

15. Despite the written offer to Davidson to access his $12,500.00 line of credit "because of the good credit on [his] Countrywide® Visa® account," Davidson was advised that a letter was sent to him on November 10, 2008, after the date of the November 6 Offer, that decreased his line of credit to $2,500.00, and, therefore, making him ineligible for the November 6 Offer he had accepted on November 7.

16. The representation about the letter allegedly sent on November 10, 2008 to notify Davidson of a decrease in his line of Countrywide® Visa® credit card account was untrue. Based on the post-mark, a letter decreasing Davidson's line of credit was not sent until November 14, 2008 after Davidson called Countrywide® Visa® on November 13, 2008 in an attempt to resolve Defendant's dishonored of the promotional check. A copy of the envelope and the enclosed letter notifying Davidson of a decrease in his line of credit are attached hereto collectively as Exhibit F.

17. Davidson also received a second letter from Countrywide postmarked November 14, 2008. That second letter was a renewal of the November 6 promotional offer to Davidson, and, again, invited Davidson to access his $12,500.00 line of credit for one year at 0% interest. A

4

copy of the envelope and the enclosed letter notifying Davidson of the renewal of his November 6 Offer to access his $12,500.00 line of credit are attached hereto collectively as Exhibit G.

18. Davidson has accepted numerous offers from credit card companies inviting him to take advantage of low interest rate offers on cash advances. Historically, Davidson has regularly paid off those promotional offers, including the $10,000.00 offer previously extended by Countrywide® Visa®, without having to pay interest to those credit card companies.

19. Upon information and belief, Defendant has declined to extend its credit pursuant to the November 6 Offer that Davidson accepted because Davidson's credit card payment history reveal that Davidson timely pays-off the 0% promotional offers. Importantly, Davidson's credit card payment history stands in contrast to a statistically overwhelming scenario in which consumers do not and/or are unable to pay-off the balances related to 0% promotional offers and are then required to pay extremely high interest rates on those balances. Defendants are no doubt aware of this statistic and no doubt discovered from Davidson's credit record and credit card payment history that Davidson timely pay-offs promotional balances without paying any interest. Because banks do not make money loaning money for free, Defendant declined to honor the contract it made with Davidson under the terms of its November 6 Offer because Defendant's research of Davidson's credit card payment history revealed that Davidson would timely pay-off the promotional balance without paying any interest.

## COUNT II

### BREACH OF CONTRACT

20. Davidson incorporates herein by reference paragraphs one (1) through nineteen (19) of this Complaint.

5

21. Davidson and Defendant entered into a contract whereby Defendant offered in Exhibit A to this Complaint to extend funds up to the amount of his credit line on his Countrywide® Visa® credit card account. Davidson accepted Defendant's offer by issuing the promotional check attached to this Complaint as Exhibit B that was supplied by Defendant for that purpose ("Contract").

22. Defendant breached its Contract with Davidson, including the covenant of good faith and fair dealing that is implied as a term of every contract under Arkansas law.

23. Davidson has honored and otherwise not breached the terms of his Contract with Defendant.

24. As a proximate cause of Defendant's breach of the Contract, Davidson has suffered monetary damages, including, 1) bank fees, 2) the necessity of securing funds to cover his check payments to creditors, including the United States Treasury, that were supposed to be funded by the Countrywide® Visa® promotional check, 3) the loss of use of funds for one year at 0% interest that should have available for Davidson to use to pay his credit accounts bearing interest rates in excess of 0%. Further, as a result of Defendants breach of the Contract, Davidson has suffered the value of his lost time as an attorney that has and will be necessary to rectify the Defendant's wrongful dishonor of the promotional check. In addition, Davidson has suffered diminishment of his credit score and the corresponding ability to obtain credit in the future as a result of Defendant's reduction of his line of credit on the Countrywide® Visa® credit card on false pretenses. Finally, Davidson has suffered embarrassment, humiliation and losses to his reputation related to rectifying problems created by the Defendant's dishonor of the promotional check and the corresponding actions he was required to take to remedy the 'hot-checks' that resulted from Defendant's breach of the Contract.

## COUNT II

### DECEIT

25.  Davidson incorporates herein by reference paragraphs one (1) through twenty-four (24) of this Complaint.

26.  Defendant represented to Davidson that he was entitled to accept the terms of the November 6 Offer.

27.  Defendant's representations contained in the November 6 Offer were untrue and Defendant knew its representations in that Offer were untrue at the time it made that Offer. This is corroborated by the renewal of the November 6 Offer on November 14, 2008 when Defendant knew it would not honor the terms of that Offer.

28.  Davidson relied to his detriment on the truthfulness of Defendant's representation.

29.  Davidson has suffered monetary damages as a result of Defendant's deceit in an amount to be proven at trial, including those damages which are set forth above in paragraph twenty-four (24) of this Complaint.

30.  The Defendant's deceit was intentional and designed to benefit Defendant financially to the detriment of Davidson, and to deter Defendant and others similarly situated from engaging in such conduct in the future, Davidson is entitled to an award of punitive damages from Defendant in an amount to be determined at trial, but in no event less than $37,500.00, which is three (3) times the amount of the line of credit Defendant falsely extended to Davidson

7

## COUNT III

## VIOLATION OF DECEPTIVE TRADE PRACTICES ACT

31. Davidson incorporates herein by reference paragraphs one (1) through thirty (30) of this Complaint.

32. By its actions set forth in the preceding paragraphs, Defendant has engaged in unconscionable, false and deceptive acts in the course of conducting business, commerce and trade.

33. Davidson has been damaged by the above-described conduct that constitutes deceptive trade practices in violation of Ark. Code Ann. §4-88-107(10).

34. Davidson has suffered damages in an amount to be determined at trial, including those damages which are set forth above in paragraph twenty-four (24) of this Complaint.

35. The Defendant's deceptive trade practices were intentional and designed to benefit Defendant financially to the detriment of Davidson, and to deter Defendant and others similarly situated from engaging in such conduct in the future, Davidson should be awarded punitive damages from Defendant in an amount to be determined at trial, but in no event less than $37,500.00, which is three (3) times the amount of the line of credit Defendant falsely extended to Davidson.

WHEREFORE, Plaintiff Derrick Davidson requests this Court grant him judgment against Defendant for compensatory and punitive damages, as appropriate, for breach of contract, deceit, and deceptive trade practice, plus prejudgment and post-judgment interest, costs, expenses, including reasonable attorney's fees, and all other amounts due to Davidson for each of his causes of action and all other relief to which they are otherwise justly entitled.

Respectfully Submitted,

**DERRICK DAVIDSON**

by their attorney,

Derrick Davidson, P.A.
3236 E. Charing Cross
Fayetteville, Arkansas  72703
ph  (479)685-2444
fax (479)856-6168

By: _____
Derrick Davidson     ABA #90214

9